1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   W. BYRON MITCHELL, JR. and             CASE NO. 14cv1552-GPC-JLB
     NANCY L. MITCHELL, individuals,
12                                           **ORDER FOLLOWING ORDER TO**
                               Plaintiffs,   **SHOW CAUSE**
13        v.

14
     TOTAL WEALTH MANAGEMENT
15   INC., a California corporation;
     ALTUS CAPITAL MANAGEMENT,
16   LLC, a Delaware limited partnership;
     ALTUS CAPITAL OPPORTUNITY
17   FUND LP, a Delaware limited
     partnership; CAPITA ADVISORS,
18   INC., a California corporation;
     FINANCIAL COUNCIL, INC., a
19   California corporation; PINNACLE
     WEALTH GROUP, INC., a California
20   corporation; JACOB K. COOPER;
     NATHAN P. MCNAMEE;
21   DOUGLAS D. SHOEMAKER; and
     DOES 1 through 100, inclusive,
22
                               Defendants.
23

24        On February 6, 2015, Receiver Kristen A. Janulewicz ("Receiver") filed a Notice

25   of Pending Receivership regarding her appointment as a temporary Receiver for Total

26   Wealth Management Inc., and its subsidiaries and affiliates, including, but not limited

27   to Atlus Capital Management, LLC, in *Securities and Exchange Commission v. Total*

28   *Wealth Management*, Case No. 15-cv-226-BAS (DHB) (the "Receivership Action").

                                    -1-                    14cv1552-GPC-JLB

1   (ECF No. 49.)

2       On February 12, 2015, District Judge Cynthia Bashant (hereinafter "the

3   Receivership Court") issued a preliminary injunction order, wherein she appointed the

4   Receiver as a permanent receiver.  (Case No. 15-cv-226-BAS (DHB), ECF No. 8.)  The

5   order appointing a permanent receiver provides that:

6
7       [E]xcept by leave of this Court, during the pendency of this receivership,
        all clients, investors, trust beneficiaries, note holders, creditors, claimants,
        lessors and all other persons or entities seeking relief of any kind, in law
8       or in equity, from Defendant Total Wealth Management, Inc., or its
        subsidiaries or affiliates . . . are hereby restrained and enjoined from,
9       directly or indirectly, with respect to these persons and entities . . .
        commencing, prosecuting, continuing or enforcing any suit or proceeding
10      (other than the present action by the SEC or any other action by the
        government) against any of them . . . .

11

12  (*Id.* at 11.)

13      On February 17, 2015, this Court issued an Order to Show Cause ("OSC") why

14  this action should not be stayed during the pendency of the receivership in *Securities*

15  *and Exchange Commission v. Total Wealth Management*, Case No. 15-cv-226-BAS

16  (DHB).  (ECF No. 51.)  Plaintiffs and the Receiver both filed responses to the OSC on

17  March 6, 2015 (ECF Nos. 52 & 53.)  None of the other Defendants filed responses.  On

18  March 13, 2015, Plaintiffs filed a reply brief.  (ECF No. 54.)

19                                **BACKGROUND**

20  **A.    The SEC Action**

21      On April 15, 2014, the Securities and Exchange Commission ("SEC") issued an

22  Order Instituting Administrative and Cease-and-Desist Proceedings in its investigation

23  of Total Wealth Management, Inc. ("TWM"), Jacob Keith Cooper ("Cooper"), Nathan

24  McNamee ("McNamee"), and Douglas David Shoemaker ("Shoemaker").  (ECF No.

25  53, Ex. D.)  According to the SEC's order, McNamee is the current president and chief

26  compliance officer of TWM, an investment adviser representative for TWM, and the

27  sole founder and operator of Capita Advisors, Inc. ("Capita").  (*Id.*, Ex. D ¶¶ 1, 3, 11.)

28  Shoemaker is a co-founder and former chief compliance officer of TWM, an

1  investment adviser representative for TWM, and the sole founder and operator of

2  Financial Council, Inc. ("Financial Council").  (*Id.*, Ex. D ¶¶ 1, 3, 12.)  The SEC

3  alleges that TWM entered into revenue sharing arrangements with several investment

4  funds (including Altus funds), such that when TWM placed its clients' investments in

5  those funds, TWM received sharing fees.  (*Id.*, Ex. D ¶¶ 25, 53.)  TWM, in turn, paid

6  Cooper, McNamee, and Shoemaker a portion of the revenue sharing fees it received.

7  (*Id.*, Ex. D ¶ 26.)

8      The SEC further alleges that "[a]bout the same time that the Altus Capital Fund

9  was established [by Cooper], Cooper formed Pinnacle, and he advised Shoemaker and

10 McNamee to form Financial Council and Capita, respectively." (*Id.*, Ex. D ¶ 27.) After

11 forming their respective "consulting" companies, McNamee and Shoemaker would

12 routinely invoice TWM for "consulting fees," even though McNamee and Shoemaker

13 did not do any consulting work.  (*Id.*, Ex. D ¶ 28.)  The money TWM paid in response

14 to these invoices instead represented McNamee and Shoemaker's shares of the revenue

15 sharing fees.  (*Id.*)

16     In addition, McNamee and Shoemaker are alleged to have known of, and aided

17 and abetted, TWM and Cooper's failure to adequately disclose material information

18 about the revenue sharing fee arrangement because they (1) reviewed brochures,

19 offering memoranda, statements, Forms ADV, and other materials that Total Wealth

20 provided to its clients, (2) signed off on these materials, (3) met with prospective

21 clients and investors, (4) prepared investment recommendations for those clients, and

22 (5) sold the Altus investments to clients, all the while failing to disclose to the investors

23 the truth about the revenue sharing agreements.  (*Id.*, Ex. D ¶¶ 41-42.)

24     The SEC action seeks to determine, among other things, what remedial action

25 should be taken against McNamee and Shoemaker, including "civil penalties and

26 disgorgement." (*Id.*, Ex. D ¶¶ C, E, H, I.)

27 ///

28 ///

**B.      Plaintiffs in this Case**

Plaintiffs W. Byron Mitchell, Jr. and Nancy L. Mitchell (the "Mitchell Plaintiffs") are healthcare professionals of retirement age who invested over one million dollars with Defendants in June of 2010. (Complaint, ECF No. 1 ¶¶ 14-16, 38.) After becoming concerned about the returns they were receiving on their accounts, the lack of communication from Defendants, and the poor handling of their accounts, Plaintiffs requested that Defendants liquidate all of their assets. (*Id.* ¶¶ 62.) Plaintiffs allege that some liquidations did take place, but in some cases, TWM retained the cash in "cash holdings" and still charged Plaintiffs management fees. (*Id.*)

Plaintiffs because aware of the SEC action instituted on April 15, 2014, and filed this action soon after on June 26, 2014. (*Id.* 63.) In their Complaint, Plaintiffs allege fifteen claims for relief, including violations of federal and California securities laws, unfair competition, constructive fraud, breach of fiduciary duty, accounting, and common counts. (*Id.* ¶¶ 97-208.)

**DISCUSSION**

The parties dispute whether the injunction issued by the Receivership Court should be extended to stay this action. The Receiver acknowledges that the preliminary injunction does not bar prosecution of litigation against the individual defendants in this case or entities not deemed to be Receivership Entities[1]. (ECF No. 52 at 1.) However, for practical reasons, the Receiver recognizes that the injunction "has significant implications" in connection with discovery, summary judgment, and potential judgment enforcement actions that may be undertaken against the individual and non-receivership defendants. (*Id.* at 4.) Additionally, the Receiver believes "that those defendants in this matter to whom the litigation stay does not apply will almost certainly become subjects of the Receiver's investigation effort, and may themselves

[1] The Receiver defines the "Receivership Entities" as "Total Wealth Management, Inc. and its subsidiaries and affiliates, including but not limited to Altus Capital Management, LLC." (ECF No. 52 at 1.)

1   become defendants or relief defendants in the Receivership Case or in Receivership

2   Asset recovery litigation brought by the Receiver." (*Id.* at 5.)  For this reason, failing

3   to impose a blanket stay in this case could result in a "race to the courthouse," wherein

4   some claimants may obtain relief first, to the detriment of other claimants. (*Id.*)  The

5   Receiver also argues that judicial economy militates against evaluating claims in a

6   piecemeal fashion.  (*Id.*)   Accordingly, the Receiver does not object to the Court

7   staying the action in its entirety pending resolution of the Receivership Case.  (*Id.*)

8        The Mitchell Plaintiffs concede that the injunction stays this action against

9   defendants TWM, Altus Capital Opportunity Fund LP ("Altus Fund"), Altus Capital

10  Management, LLC ("Altus Capital"), and Cooper. (ECF No. 53 at 5-6.) However, they

11  ask this Court to allow them to proceed in litigating their claims against McNamee,

12  Shoemaker, Capital, and Financial Council (collectively, the "McNamee/Shoemaker

13  Defendants"), because the Mitchell Plaintiffs seek only the *personal assets[2]* of these

14  defendants, which they contend are not part of the Receivership *res.* (*Id.* at 2, 5-6.)

15  The Mitchell Defendants also ask that the Court allow them to proceed with discovery

16  against the defendants subject to the Receivership action because it will be directly

17  relevant to proving up liability and damages against the McNamee/Shoemaker

18  Defendants. (*Id.* at 2-3.)  The crux of the Mitchell Plaintiffs' argument is that they will

19  suffer substantial injury if they are not allowed to proceed because they both are of

20  advanced age and cannot retire until they recover their "nest egg" from Defendants.

21  (*Id.*)

22       "The power of a district court to impose a receivership or grant other forms of

23  ancillary relief . . . derives from the inherent power of a court of equity to fashion

24  effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).  The "primary

25  purpose of equity receiverships is to promote orderly and efficient administration of the

26

27

28  _____
    [2]  The Mitchell Plaintiffs repeatedly use this term even though Capita and Financial Council are corporations.

1  estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803. F.2d 1034,

2  1038 (9th Cir. 1986).   In order to effectuate this goal, the receivership court has

3  authority to enjoin individuals from proceeding in another court in order to prevent

4  interference with a receivership action.   *Wencke*, 622 F.2d at 1371-72 (upholding

5  district court's order staying state action by nonparties against receivership entities

6  because "[t]here is a strong federal interest in insuring effective relief in SEC actions

7  brought to enforce the securities laws").

8         This case is somewhat unique procedurally in that the parties are asking this

9  Court, as opposed to the Receivership Court, for permission to proceed.  Given that

10  Plaintiffs and the Receiver agree that the McNamee/Shoemaker Defendants are not

11  currently part of the Receivership Action, the default position would be to allow

12  Plaintiffs to proceed forward in prosecuting their case against these defendants.  What

13  gives the Court pause is the Receiver's statement that these defendants "will almost

14  certainly become subjects of the Receiver's investigation effort, and may themselves

15  become defendants or relief defendants in the Receivership Case or in Receivership

16  Asset recovery litigation brought by the Receiver." (ECF No. 52 at 5.)  This suggests

17  that assets of the McNamee/Shoemaker Defendants may at some future date become

18  part of the receivership *res*.  Thus, allowing Plaintiffs to proceed forward against these

19  defendants could put them ahead of other claimants in recovering receivership assets.

20         At this point, however, that eventuality is entirely speculative and this Court has

21  insufficient facts before it to support a total stay of the proceedings in this Court.  As

22  Plaintiffs point out, they are of advanced age and want to retire. (ECF No. 53 at 9.)

23  Until they are able recover their "nest egg," retirement is out of reach. (*Id.*)  The Court

24  finds that, at this stage, Plaintiffs' interest in proceeding outweighs the Receiver's

25  interest in preventing any future, theoretical impact on the receivership *res*. *See S.E.C.*

26  *v. Universal Fin.*, 760 F.2d 1034, 1037-38 (9th Cir. 1985) (considering, among other

27  things, "whether the moving party will suffer substantial injury if not permitted to

28  proceed" in deciding whether to except applicants from a blanket receivership stay)

1   *quoting SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984)).   For this reason,

2   Plaintiffs' request to proceed with their case against the McNamee/Shoemaker

3   Defendants is **GRANTED**.

4        The Court turns now to Plaintiffs' request for permission to conduct discovery

5   against TWM, Altus Fund, Altus Capital, and Cooper for purposes of pursuing their

6   claims against the McNamee/Shoemaker Defendants. (ECF No. 53 at 10.) Plaintiffs

7   contend that the preliminary injunction issued by the Receivership Court does not

8   address discovery. (*Id.*) This Court disagrees. The Court finds that discovery falls

9   squarely within the Receivership Court's order prohibiting investors from "prosecuting

10  [or] continuing . . . any suit or proceeding" against the defendants in the Receivership

11  Action. (*See* Case No. 15-cv-226-BAS (DHB), ECF No. 8 at 11.) Moreover, if this

12  Court were to allow Plaintiffs to propound discovery against TWM, Altus Fund, Altus

13  Capital, and Cooper, the Receiver would be required to expend time and funds from

14  the receivership *res* in order to respond. The purpose of the receivership and the

15  litigation stay issued by the Receivership Court is to protect receivership assets and to

16  allow the Receiver time to focus on identifying and recovery receivership assets. (*Id.*

17  at 2, 9-10) (finding that "[g]ood cause exists to believe that, unless restrained and

18  enjoined by order of this Court, Defendants will dissipate, conceal, or transfer assets"

19  and that a permanent receiver was necessary "to conduct such investigation and

20  discovery as may be necessary to locate and account for all of the assets" and "take

21  such action as is necessary and appropriate to preserve and take control of and to

22  prevent the dissipation, concealment, or disposition of any assets"). Thus, to allow

23  discovery against TWM, Altus Fund, Altus Capital, and Cooper would be contrary to

24  the spirit and intent, in addition to the express language, of the Receivership Court's

25  injunction order. Plaintiffs' request to conduct discovery against TWM, Altus Fund,

26  Altus Capital, and Cooper is, therefore, **DENIED**.

27  ///

28  ///

1    In so ruling, the Court is cognizant of the fact that the Receivership Court is
2  more knowledgeable about the status of the SEC's administrative action and the
3  Receivership Action.  Absent an intervening ruling from the Receivership Court that
4  affects this case, the Court orders the Receiver to provide this Court with an update
5  regarding the status of *Securities and Exchange Commission v. Total Wealth*
6  *Management*, Case No. 15-cv-226-BAS (DHB) on or before **August 14, 2015**.

### CONCLUSION

8    For the foregoing reasons, the Court:

9    1.    **STAYS** this case as to Defendants TWM, Altus Capital, Altus Fund, and
10  Cooper[3];

11   2.    **GRANTS** Plaintiffs' request to proceed with their case against the
12  McNamee/Shoemaker Defendants;

13   3.    **DENIES** Plaintiffs' request to conduct discovery against TWM, Altus
14  Fund, Altus Capital, and Cooper; and,

15   4.    **ORDERS** the Receiver to provide this Court with an update regarding the
16  status of *Securities and Exchange Commission v. Total Wealth Management*, Case No.
17  15-cv-226-BAS (DHB) on or before **August 14, 2015**.

18   **IT IS SO ORDERED.**

19  DATED:  May 12, 2015

HON. GONZALO P. CURIEL
United States District Judge

---

[3] The Clerk of Court entered a default against Pinnacle Wealth Group, Inc. on September 15, 2014 (ECF No. 24), so the Court need not include that defendant in the instant stay.